GTVAN, Justice.
A bench trial resulted in the conviction of appellant of Murder, for which he received a sentence of sixty (60) years, and Attempted Murder, for which he received a sentence of fifty (50) years, the sentences to run consecutively.
The facts are: Tony Watters, his wife, Kelly, and her three children maintained a home in Indianapolis. Tony is blind. In the early morning of November 5, 1991, Tony heard someone banging on his front door. He went to the door and inquired who it was. He recognized the voice of his friend, Michael Walton, the appellant in this ease. He opened the door, let Walton in, and the two men sat in the living room and had a friendly conversation, which included a discussion of appellant’s cousin.
Suddenly and without any apparent reason, appellant started stabbing and slashing Watters with a knife. Watters called to his wife for help, and when appellant turned his attention toward Kelly Watters, Tony managed to escape and started calling out for someone to help him. The newspaper delivery man came to his assistance and help was summoned.
In the meantime, appellant had attacked Kelly Watters and stabbed and slashed her some twenty-five times. Kelly’s ten-year-old son, Dustin Richardson, heard his mother calling for help and saw her struggling with a man at her bedroom door. He indicated to his younger sisters that they should stay in their bedroom, then he shouted at the man to get out of the house. The man ran directly toward Richardson and knocked him to the floor as he escaped. As the man was running toward Richardson, Richardson recognized him as appellant, who had been in their house several times. Richardson then went to his mother’s aid, and at her direction he dialed 911. He observed that she was covered with blood and had several visible wounds.
Kelly Watters died a short time later at the hospital. Although severely injured, Tony Watters survived and testified at trial. Despite his blindness, he was certain appellant was his assailant because he recognized appellant’s voice and had conversed with him immediately before the attack.
Appellant took the position that another person entered the home with him and it was the other person who perpetrated the attack. He stated they had a car in front of the house, that a third person was in the car, that when he and the assailant came outside the car would not start, and that they pushed it in order to get it started. However, the newspaper carrier who came to the rescue of Tony Watters stated he had not seen a car in front and the only thing he saw was a man he believed to be appellant running from the Watters’ home. Richardson testified that shortly after the attack, he looked out front and saw no car.
Appellant claims there is insufficient evidence to support the charge that he was the attacker. He contends that Tony Watters was in no position to say appellant was the attacker because he was blind and could not see who attacked him. He also points out that when he was arrested, although he had a bloody knife in his possession and there was blood on his shoes, he did not have any blood on his clothing. In view of the severity of the attack on the two people, had he been the attacker he would have had blood on his clothing. Tests showed the blood did not come from appellant but was of a type consistent with Kelly Watters’ blood.
While he admits being present at the time the crime was committed, he argues that mere presence at the scene is not sufficient. This, of course, is correct. Menefee v. State (1987), Ind., 514 N.E.2d 1057. However, the evidence in this ease goes far beyond appellant’s mere presence at the scene. Appellant argues that although Tony Watters “thought” appellant was the only one there, he was blind; thus the judge was required to base an inference of guilt upon the inference that Tony Watters was correct in his belief that appellant was the only one there.
Appellant likewise attacks the testimony of the ten-year-old Richardson who stated he did not see another person in the house. Appellant takes the position that Richardson was a child and admittedly did not see the entire altercation. Appellant attempts to answer the testimony of Richardson and the paper carrier, who both testified that they did not see a car in front of the house. *806 Appellant contends that his statement that there was a waiting car is not really contradicted because the car could have been around the comer.
Appellant takes the position that the trial court’s finding of guilt necessarily bases an inference upon an inference, which is not proper. He cites Smith v. State (1928), 200 Ind. 411, 164 N.E. 268. However, in Shutt v. State (1964), 233 Ind. 169, 117 N.E.2d 892, this Court set forth the manner in which inferences may be used as evidence in a criminal trial. There the Court stated:
“What is actually meant by the statement found in many cases, that an inference cannot be based upon an inference, is that an inference cannot be based upon evidence which is uncertain or speculative or which raises merely a conjecture or possibility. (Citations omitted.)
It may be true that appellant’s guilt must be established by inference drawn from circumstantial evidence. However, these inferences are not based upon uncertain or speculative evidence but upon proven facts which are, under the surrounding circumstances in this case, sufficient to support an inference of guilt.” Id. at 174, 117 N.E.2d at 894.
The same is trae in the case at bar. Although appellant maintains another person was in the house with him and perpetrated the attack, there is a total lack of evidence to support his contention. Tony Watters, although blind, was adamant in his statement that appellant was his attacker. Appellant seems to place great emphasis on the fact that Richardson was only ten years old and that his testimony that he saw no one else there nor did he see a ear in the front of the house is not of great weight. However, because of Richardson’s young age, we have examined his testimony in its entirety and find it to be quite remarkable for a boy of that age. His testimony is clear and concise and shows a well-above-average intelligence.
Also, the fact that he directed his sisters out of harm’s way, responded to his mother’s direction to dial 911, and obtained a pillow from her bed to put under her head as she lay on the floor in order to attempt to ease her suffering until medical aid arrived, demonstrates that he is a boy of unusual capacity. Thus the trial court was well within its discretion in considering Richardson’s testimony as being factual and giving rise to the inference that appellant’s version of the evidence was untrue. This case does not violate the rules of evidence concerning the use of an inference and the evidence presented to the trial court is sufficient to support his conclusion of guilt.
Appellant claims the trial court erred when it sentenced him to the maximum sentence possible on each count and made the sentences consecutive. Appellant claims the trial court did not take into proper consideration the fact that: 1) he had no prior felony convictions as an adult; 2) the offense occurred in a setting in which he was “under the influence;” and 3) appellant is young and previously had demonstrated an ability to respond positively to a structured environment.
In sentencing appellant, the trial court took each of these factors into consideration. The trial court observed that although appellant had no prior felony convictions as an adult, he had an extensive record as a juvenile. The trial court proceeded to set forth the various offenses appellant had committed as a juvenile including one in which appellant knocked someone unconscious. The trial court also observed that appellant had appeared in municipal court as an adult and although the offenses were not serious, they nevertheless indicated appellant’s lack of concern for the rights of others. One resulted in a sixty-four day jail sentence with twelve days executed.
The trial judge further observed that the issue of intoxication was not supported by any evidence except the testimony of appellant. We would observe that the record indicates appellant had the ability to come in and have an extended conversation with Tony Watters before he commenced the attack. He was able to effect his escape from the premises and was not arrested until he was found asleep in his mother’s home. The trial judge is correct in his observation that there is no evidence in this record of his intoxication except for his own statements.
As aggravators, the trial judge found that appellant perpetrated an attack upon a blind *807 man, that both of the victims were stabbed and slashed many times, that at the time of the attack appellant was an invitee in the home, and that there was no need for appellant to attack the persons. The trial judge found that the aggravators far outweighed any mitigators. The evidence in this case clearly supports the decision of the trial judge.
The trial court is affirmed.
SHEPARD, C.J., and DeBRULER, DICKSON and SULLIVAN, JJ., concur.